# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

John Weiss,

        Plaintiff,

v.

CPC Logistics, Inc.,

        Defendant.

**MEMORANDUM OF LAW & ORDER**
Civil File No. 10-117 (MJD/JJG)

---

Alf E. Sivertson, Law Offices of Sivertson & Barrette, PA, Counsel for Plaintiff.

Andrew J. Voss and Joseph D. Weiner, Littler Mendelson, PC, Counsel for Defendant.

---

## I.     INTRODCUTION

This matter is before the Court on Defendant's Motion for Summary Judgment.  [Docket No. 21]  Oral Argument was heard Friday, March 11, 2011. For the reasons discussed below, the Court will deny Defendant's Motion for Summary Judgment.

## II.    FACTUAL BACKGROUND

### A. Parties

Defendant CPC Logistics, Inc., ("Defendant" or "CPC") provides truck driving services to customers across the county.  To support this business, CPC employs truck drivers, dispatchers, clerks, mechanics, and warehousemen who service CPC customers' accounts.  GAF Materials, Inc. ("GAF") is one of CPC's biggest clients in Minnesota.  GAF manufactures residential and commercial roofing materials, and CPC drivers transport those materials to construction sites across Minnesota.  All of the equipment used by CPC drivers is owned or leased by the customers, and the customers carry the liability insurance for the equipment and vehicles.  Accordingly, CPC agrees to respond to its customers' concerns about the actions of CPC employees.

Plaintiff John Weiss ("Weiss") was initially hired on July 5, 2005 as a truck driver for CPC, and was assigned to service the GAF account.  Weiss's job duties included hooking and unhooking trailers from the tractor, loading and unloading the trailer, inspecting the truck for defects and safe operating conditions before, during, and after trips, and driving the truck in accordance with all federal regulations.

**B.  Weiss's Initial Employment with CPC**

As part of his employment, Weiss received a copy of CPC's Policy and

Safety Handbook ("the Handbook").  The Handbook contains CPC's Statement

of Safety Policy, which states:

> The management of the corporation believes that the safety and well being of all company employees is important both for humanitarian and economic reasons…
>
> We encourage all of our employees to relate any ideas or concerns pertaining to safety, to their Regional Manager/Operations Manager or to the CPC Safety Department in St. Louis.  Your concern can be reported anonymously, if so desired.
>
> All employees will comply will all applicable Federal, State, and Local laws and ordinances as well as the safety policies and procedures as outlined in this handbook.  Failure to comply with these policies and procedures may result in the loss of or reduction in worker's compensation benefits and could subject you to disciplinary action.

(Weiner Aff. Ex. F.)

When Weiss was first employed, the lead driver on the GAF account was

Mike Klenner ("Klenner").  During this time, Weiss reported to Angelo Petrone

("Petrone"), who was GAF's Shipping and Receiving Manager, that Klenner was

passing his responsibilities onto other drivers.  Weiss testified that as a result of

his report, Klenner attempted to get him terminated.  Petrone told Weiss that

Klenner and another CPC driver, Jeff Farber, were attempting to sabotage

Weiss's work.  Eventually, Klenner resigned from CPC and no longer serviced the GAF account.  At this point, Petrone informed Weiss that he was the lead driver for the  GAF account.

As lead driver, Weiss's duties included: operating the GAF Fleet, keeping a daily roster of driver's absences and advising the CPC Regional Manager assigned to the account of problems, calling drivers to work or sending them home, keeping track of and investigating accidents, filing reports to GAF and the local CPC manager, and keeping the local CPC manager advised of any personal issues or concerns.

At first, GAF and Petrone were pleased with Weiss's performance as lead driver for the GAF account.  In fact, Petrone wrote a letter to Weiss's supervisor, Scott Lukken ("Lukken") recommending that Weiss be selected CPC driver of the month.  In the letter, Petrone stated that "John has become completely familiar with my customer base and has developed a good working relationship with them.  In addition to his can-do attitude, I find John to be a very responsible and loyal individual, with great attention to safety, an impeccable work ethic and an impressive attendance record."  (Weiner Aff. Ex. I.)  As a result, Weiss was selected as driver of the month in February 2007.

In May of 2008, Weiss received recognition for outstanding driver safety, for going two years without a preventable accident.  In July 2008, Weiss again received recognition for his job performance, when John Bickel, President of CPC, wrote Weiss a letter praising Weiss's commitment to safety.

### C.  GAF Customer Complaints About Weiss

Eventually, GAF employees began to report to Lukken that GAF's customers were complaining about Weiss.  Denise McMahon ("McMahon"), the traffic coordinator at GAF, received a number of complaints, stating that Weiss would heckle the customers' employees and drove recklessly through the customers' property.  McMahon reported these complaints to her supervisor at GAF, Scott Imhoff ("Imhoff") and Lukken.  Lukken testified that although he asked Imhoff for these complaints to be placed in writing, Lukken never received anything in writing.

### D. Weiss's Reports Concerning Klenner

In November 2008, Weiss was removed as lead driver on the GAF account. Lukken informed Weiss that Klenner had been rehired, and was going to take over as lead driver on the GAF account.  Weiss was concerned with this decision, and he informed both Lukken and CPC Divisional Manager Richard Anderson

("Anderson") that he believed Klenner would attempt to get him fired.  Shortly

thereafter, Weiss began making complaints about Klenner.  Weiss initially

complained about how Klenner was distributing the loads amongst the drivers.

Weiss also complained that Klenner was "stealing time from the company" by

not doing his job.

Weiss continued to complain to Lukken about his belief that Klenner was

stealing time from the company.  Eventually, Weiss made reports concerning

Klenner's failure to wear his hard hat in the GAF plant, and Klenner's failure to

do his pre-trip and post-trip inspections.  Weiss contacted Lukken three times to

report Klenner's safety violations.  In late 2008, Weiss's first safety complaint was

that Klenner did not perform his pre-trip or post-trip inspection and that he did

not wear his hard hat around the GAF plant.  Again in late 2008, Weiss's second

safety complaint occurred when Weiss called Lukken to report that Klenner

again failed to do his inspections, after Weiss saw oil on the ground of the GAF

plant where Klenner had been parked.  Weiss informed Lukken that he felt that

on this occasion Klenner's engine could have blown up because it was leaking

oil.  Weiss's final safety related report was made in January of 2009, when Weiss

informed Lukken that Klenner was not wearing his hard hat around GAF's

plant, as required by the safety rules.  Weiss did not report any other safety violations to Lukken.

Lukken investigated Weiss's safety complaints.  On two occasions Lukken observed Klenner doing his required inspections.  Lukken also observed Klenner at the GAF plant and found that, on those occasions, Klenner was wearing his hard hat.  Lukken did not however, discuss these complaints with Klenner.  Lukken concluded from these observations that Klenner had not committed any safety violations.

### E.  Anderson's Observations of Weiss

In early 2009, Carlo Melia ("Melia"), a GAF Vice President, called Anderson to discuss whether Weiss should be terminated, and in turn Anderson called Larry Foltz ("Foltz"), Vice President of Western Operations at CPC.  On February 3, 2009, Anderson conducted an observation of Weiss by following Weiss during his shift without his knowledge.  During this follow-along, Anderson observed a number of safety violations, including exceeding the speed limit and failure to perform his pre and post-trip inspections.  On February 4, 2009, Anderson sent Weiss a letter detailing the violations he had observed the previous day.  On February 5, 2009, Anderson wrote an email to Melia

concerning Anderson's observations.  Anderson informed Melia that he had

observed a number of violations, and further stated that Weiss had been sent a

warning letter detailing these violations.  Anderson concluded the email by

telling Melia that if Weiss's safety violations continued he would be disciplined

further.

### F.  March 20, 2009 Incident and Weiss's Termination

On March 20, 2009, Lukken received a phone call from a motorist

complaining about a driver in a GAF tractor trailer.  The motorist complained

that between 7:30 and 7:45 a.m. the driver was tailgating, sped past the motorist,

and gave the motorist the finger.  The tractor and trailer number of the vehicle

matched the number of the vehicle Weiss was driving on that day.  Lukken used

the *69 function and was able to obtain the telephone number of the motorist.

Lukken called the number and received a voice message identifying the motorist

as "Jeff."

Lukken spoke with Weiss concerning the incident with the motorist, and

Weiss denied all the allegations.  Weiss informed Lukken that he believed the

motorist's claim was a fabrication, made in an attempt to have Weiss fired.

Weiss testified that he was not on the road at the time the motorist alleged the

CPC driver was driving erratically.  Weiss's logbooks show that between 7:30 and 7:45, Weiss was on duty but not driving, because during that time period he was at the Northeast Minneapolis GAF facility.  Weiss avers that the motorist who called to report his driving was in fact Jeff Farber, a former CPC employee, who Weiss contends fabricated the report in an attempt to get him terminated.

Lukken reported this incident to Anderson, who in turn reported to Foltz. Lukken and Anderson determined that Weiss should be suspended pending a final determination of his continued employment with CPC.  On March 24, Weiss received a letter placing him on suspension pending further investigation of the incident.  Foltz reviewed the information concerning this incident and determined that due the seriousness of this incident, within the context of GAF's concerns, Weiss should immediately be terminated from his employment with CPC.  Both Anderson and Foltz have testified that they were not aware that Weiss had made any safety reports to Lukken concerning Klenner.  On March 27, 2009, Lukken informed Weiss that he was being terminated.  Lukken testified that there is no written report of the March 20, 2009 incident.

### G. CPC's Uniform Rules and Regulations

With regard to disciplinary issues for CPC drivers assigned to GAF, Defendant has established the Uniform Rules and Regulation for Those Employees Assigned to GAF Materials Corporation (the "Uniform Rules").  The Uniform Rules, which include the penalties for violations, are "posted and presented to each driver so that all employees may know what duties are required of them in the general conduct of company business."  (Weiner Aff. Ex. T.)  According to the Uniform Rules, the first offense for a failure to check equipment, discourtesy to customers, use of profanity while representing CPC or its clients, or conviction of traffic violations is disciplined by a warning letter. The discipline for a second offense of any of the above listed conduct is a five day suspension.  The discipline for a third offense is discharge.  Additionally, the Uniform Rules set forth that the penalty for three minor offenses in a sixty day period is a three day suspension.  The Uniform Rules define a minor offense "as a rule violation for which the penalty is a reprimand."  (Id. Explanatory Notes.)

### H. Procedural Background

Weiss originally filed this action in Hennepin County District Court.  On January 14, 2010, this case was removed based on diversity jurisdiction.  [Docket No. 1]  On February 16, 2010, Weiss filed an Amended Complaint, which alleges

Count I: Violation of Minnesota's Whistleblower Law, Minn. Stat. § 181.932.  On

January 3, 2011, Defendant filed a Motion for Summary Judgment.  [Docket No.

21]

## III.   DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most

favorable to the non-moving party, there is no genuine dispute as to any material

fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking

summary judgment bears the burden of showing that there is no genuine dispute

as to any material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Summary judgment is only appropriate when "there is no dispute of fact and

where there exists only one conclusion."  Crawford v. Runyon, 37 F.3d 1338, 1341

(8th Cir. 1994) (citation omitted).

"Only disputes over facts that might affect the outcome of the suit under

the governing law will properly preclude the entry of summary judgment.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Factual disputes that

are irrelevant or unnecessary will not be counted.  Id.  "[I]n ruling on a motion

for summary judgment, the nonmoving party's evidence 'is to be believed, and

all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v.

Cromartie, 526 U.S. 541, 552 (1999).

**B.  Whistleblower Claim**

The Minnesota Whistleblower Statute, Minn. Stat. § 181.932, subdiv. 1,

states:

> An employer shall not discharge, discipline, threaten, otherwise
> discriminate against, or penalize an employee regarding the
> employee's compensation, terms, conditions, location, or privileges
> of employment because:
>
> (1)  the employee, or a person acting behalf of an employee, in good
> faith, reports a violation or suspected violation of any federal or
> state law or rule adopted pursuant to law to an employer or to any
> governmental body or law enforcement official.

Claims brought under § 181.932 are analyzed using the burden shifting analysis

set forth in McDonnell Douglas Corp. v. Green. 411 U.S. 792 (1973).  Cokley v.

City of Otsego, 623 N.W.2d 625, 630 (Minn. Ct. App. 2001).  Under this standard,

Weiss must first establish a prima facie case of retaliatory discharge.  Id.  If Weiss

establishes a prima facie case, then the burden shifts to the CPC to articulate a

legitimate, non-discriminatory reason for the Weiss's termination.  Id.  If the

employer establishes a legitimate, non-discriminatory reason for Weiss's

termination, then Weiss must demonstrate that the CPC's articulated reason is actually pretext for retaliation.  Id.  "At all times, the employee has the burden to prove by a preponderance of evidence that the employer's action was for an impermissible reason."  Id.

In order for an employee to establish a prima facie case of retaliatory discharge, "the employee must show: (1) statutorily protected conduct by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the two."  Id. (citation omitted).  "A whistleblower claim need not identify the specific law or rule that the employee suspects has been violated, so long as there is a federal or state law or rule adopted pursuant to law that is implicated by the employee's complaint, the employee reported the violation or suspected violation in good faith, and the employee alleges facts that, if proven, would constitute a violation of law or rule adopted pursuant to law."  Abraham v. County of Hennepin, 639 N.W.2d 342, 354-55 (Minn. 2002) (citation omitted).

### 1. Prima Facie Case

Defendant contends that Weiss's claim fails because he did not report the alleged safety violations in good faith, and because there is no casual connection between Weiss's safety reports and his termination.

### a.  Whether Weiss's Reports Were Made in Good Faith

In determining whether a report was made in good faith, a court "must look not only at the content of the report, but also at the reporter's purpose in making the report." Obst v. Microtron, Inc., 614 N.W.2d 196, 202 (Minn. 2000). "The central question is whether the reports were made for the purpose of blowing the whistle, i.e., to expose an illegality." Id. Courts must "look at the reporter's purpose at the time the reports were made, not after subsequent events have transpired." Id. The reason courts must look to the reporter's purpose at the time the reports were made "is to ensure that the report that is claimed to constitute whistle-blowing was in fact a report made for the purpose of exposing an illegality and not a vehicle, identified after the fact, to support a belated whistle-blowing claim." Id.

Defendant argues that Weiss did not report Klenner's failure to wear his hard or his failure to complete his pre and post-trip inspections to expose illegality, but rather reported the behavior because of personal animosity Weiss

had for Klenner.  Defendant contends that when the context of the reports is

considered, it is clear that Weiss did not make his reports for the purpose of

exposing illegality, and thus the reports were not made in good faith.

The Court finds that genuine disputes of material fact exist concerning

whether Weiss made his reports in good faith.  Weiss testified that the pre and

post-trip inspections are critical to the safety of the public, as well as to the safety

of the drivers as well.  Furthermore, Weiss testified that he was aware that GAF

had strict rules about people walking around the plant without wearing hard

hats.  Additionally, Weiss stated that on one occasion he was concerned that

Klenner's truck could have blown up on the road because it was leaking oil.  In

this context, Weiss has presented evidence that he had a good understanding of

the importance of safety.  In fact, throughout Weiss's employment he has been

commended on multiple occasions for his commitment to safety.

Although Defendant contends that Weiss made these safety reports

because of his animosity for Klenner, and not to expose an illegality, Weiss has

presented evidence that he reported Klenner's hard hat violations because he

was aware of GAF's strict rules that individuals wear hard hats around the plant.

Furthermore, Weiss has presented evidence that he reported Klenner's failure to

do his inspections because Weiss was aware that it was unsafe for a driver to fail

to do their inspections.  From the evidence before the Court, a reasonable fact

finder could determine that Weiss made his reports about Klenner in good faith.

Thus, Weiss has established the first prong of his prima facie case.  Defendant

concedes that Weiss has met the second prong because he was terminated.

### b.  Casual Connection

The causation element may be satisfied "by evidence of circumstances that

justify an inference of retaliatory motive, such as a showing that the employer

has actual or imputed knowledge of the protected activity and the adverse

employment action follows closely in time."  <u>Dietrich v. Canadian Pac. Ltd.</u>, 536

N.W.2d 319, 327 (Minn. 1995) (citation omitted).

Defendant contends that Weiss cannot establish a prima facie case of

retaliatory discharge because Weiss cannot show a causal connection between his

reports and his safety violations.  Defendant argues that Weiss only reported

these safety violations to Lukken, as opposed to Anderson or Foltz.  Accordingly,

Defendant contends that Anderson and Foltz never had any knowledge of the

safety violations.  Defendant stresses that Foltz was the person who made the

decision to terminate Weiss, and that Foltz did so as a result of Weiss

employment issues, thus Weiss cannot show a causal connection.  <u>Kunferman v. Ford Motor Co.</u>, 112 F.3d 962, 965 (8th Cir. 1997) (holding that to establish a causal connection, a plaintiff must show that the person who made the decision knew of the protected activities).  Accordingly, Defendant argues that Weiss cannot establish a causal connection between his reports and his termination.

The Court finds that there are genuine disputes of material fact with regard to CPC's knowledge of Weiss's reports.  Defendant's arguments fail to acknowledge the evidence presented by Weiss in relation to the role Lukken played in Weiss's termination.  First, Lukken testified that he had the "front line" responsibility for disciplining and firing CPC drivers.  Second, Lukken was the person who investigated the March driving incident, suspended Weiss, prepared the summary of the incident, gave the information to Anderson, and spoke with Anderson about the incident.  Finally, it was Lukken who wrote and signed the letter informing Weiss that he was terminated.  Accordingly, the Court finds that there are genuine disputes of material fact concerning the role Lukken played in the disciplining and ultimate termination of Weiss.  Thus, there are disputes of fact regarding CPC's knowledge of the protected conduct.

Moreover, viewing the facts in the light most favorable to Weiss, the Court finds that Weiss has established the causal connection prong of a prima facie case. Initially, the Court notes the close temporal proximity of Weiss's safety reports and his termination. Weiss made his last safety report in January of 2009, and he was terminated two months later. Given that there are factual disputes concerning CPC's knowledge of Weiss's reports, this temporal proximity serves as circumstantial evidence of a causal connection. Dietrich, 536 N.W.2d at 327.

Furthermore, looking at the totality of the circumstances, Weiss has presented evidence that Defendant's decision to terminate Weiss, as opposed to giving him a suspension, deviates from the Uniform Rules published by Defendant to make its drivers aware of what conduct is prohibited and what disciplinary action drivers would face from engaging in such conduct. For the conduct observed by Anderson, Weiss received a warning letter. Weiss contends that the erratic driving and obscene gesture allegedly made by Weiss in March, which was his second offense, according to the Uniform Rules should have resulted in a five day suspension. Lukken himself testified that according to the Uniform Rules, it appears that the March incident should have resulted in a five day suspension. (Lukken Dep. 118-19.) This apparent deviation from the

disciplinary policy, coupled with the temporal proximity of Weiss's termination to his safety reports, raises an inference of a retaliatory motive. Ultimately, the timing and type of action taken by Defendant raises questions of fact which are best left for a jury. Thus, the Court finds that Weis has established a prima facie case and will move onto the second step of the McDonnell Douglas analysis.

### 2.    Legitimate Non-Discriminatory Reason for Termination

Defendant has articulated a legitimate non-discriminatory reason for Weiss's termination. Defendant asserts that Weiss was terminated because of GAF's concerns about customer complaints along with numerous safety violations. Thus, the Court must move onto the third step of the McDonnell Douglas analysis to determine whether or not the proffered reason is actually pretextual.

### 3.    Pretext

Defendant argues that even if the Court finds that Weiss has established a prima facie case of retaliatory discrimination, he cannot show that CPC's articulated reason is actually pretext for retaliation. To carry this burden of showing pretext, a plaintiff must show that the proffered justification for the adverse employment action is unworthy of credence. Erickson v. Farmland

Indus. Inc., 271 F.3d 718, 726 (8th Cir. 2001).  The methods which a plaintiff may use to demonstrate pretext include: (1) demonstrating that the proffered reason has no basis in fact, (2) demonstrating that the action the employer took was contrary to a policy or practice, (3) showing that it is unlikely that the employer would have acted on the proffered reason, and (4) providing evidence of a discriminatory attitude in the workplace.  Id. at 727.  However, courts do not sit as "super personnel departments" and should not substitute their own judgments for those made by employers, except to the extent that those judgments involved intentional discrimination.  Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 781 (8th Cir. 1995).

For reasons similar to those discussed above, concerning Defendant's apparent deviation from the Uniform Rules, the Court finds that Weiss has presented sufficient evidence of pretext to survive a motion for summary judgment.  Defendant argues that the Uniform Rules are not applicable to Weiss's conduct, and accordingly contends that Weiss's conduct was not subject to the progressive discipline laid out in the Uniform Rules.  However, the Uniform Rules do include provisions concerning conduct such as discourtesy to customers, use of profanity, traffic violations, and failure to check equipment,

which covers much of the conduct at issue.  Thus, as stated above, it appears that Defendant deviated from its stated policy by terminating Weiss.

Additionally, the Court notes that there is no written record for much of the conduct for which Defendant states it terminated Weiss.  In relation to the GAF customer complaints, despite the fact that Lukken requested Imhoff to get these complaints in writing, Lukken testified that he never received anything in writing.  Further, Lukken himself testified that although he investigated the March incident he never made a written report of the incident.  The only conduct which contains a written report are the safety violations observed by Anderson, for which Weiss received a warning letter, as prescribed by the Uniform Rules.  Given the fact that Weiss had been repeatedly commended for his safety record, coupled with the lack of a written record detailing much of Weiss's conduct, Weiss has introduced evidence that creates a factual question regarding Defendant's proffered reason for terminating him.  "As long as there exists conflicting evidence upon which reasonable men and women might differ" there is "sufficient evidence of pretext to survive a motion of summary judgment."  Hocevar v. Purdue Frederick Co., 223 F.3d 721, 727 (8th Cir. 2000).  The Court

finds that Weiss has presented such evidence, and thus will deny Defendant's

motion.

## IV.    CONCLUSION

Accordingly, based upon the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

Defendant CPC Logistics, Inc.'s Motion for Summary Judgment
[Docket No. 21] is **DENIED**.


Date:  August 15, 2011                             s/ Michael J. Davis
                                                   Michael J. Davis
                                                   Chief Judge
                                                   United States District Court